UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GLASSWALL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-332-HSM-DCP |
| | ) | |
| AGC FLAT GLASS NORTH AMERICA, INC., | ) | |
| and POMA GLASS & SPECIALITY WINDOWS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions:

1. Defendants' Motion to Amend Scheduling Order and for Status Conference ("Motion to Amend") [Doc. 73];

2. Plaintiff's Motion for Extension of Time to Comply with Court Order ("Motion for Extension") [Doc. 74];

3. Defendants' Motion for Sanctions or, in the Alternative, to Compel ("Motion for Sanctions/Compel") [Doc. 79]; and

4. Defendants' Motion to File Under Seal Certain Documents Marked "Confidential" ("Motion to Seal") [Doc. 80].

The parties appeared before the Court for a motion hearing on October 19, 2018. Attorneys James Cinque and Jesse Dean-Kluger appeared via telephone, and Attorney W. Morris Kizer appeared in-person on behalf of Plaintiff. Attorney Richard Rose appeared on behalf of Defendants. Accordingly, for the reasons set forth below, the Court **GRANTS [Doc. 73]**,

**DENIES AS MOOT** [**Doc. 74**], and **GRANTS IN PART AND DENIES IN PART** [**Docs. 79** and **80**].

## I.    BACKGROUND

Plaintiff is a Florida limited liability company engaged in the business of manufacturing window wall and curtain wall systems used in high-rise commercial and residential buildings. [Doc. 1-1 at ¶¶ 2, 10]. In 2012, Monadnock Construction Co., Inc. contracted with Plaintiff to fabricate curtain wall units at its Miami factory and deliver the units to New York for erection on-site during the construction of two residential towers ("the Project"). [*Id.* at ¶¶ 15, 17-19].[1] In 2013, Plaintiff entered into an agreement with Defendants for the supply of the glass, known as "glass lites," for the Project. [*Id.* at ¶¶ 20-22]. Plaintiff alleges that Defendants failed to timely deliver the glass in conformance with the required specifications and timeline, misrepresented their abilities to perform their obligations, and breached an implied warranty of merchantability, all resulting in damages being suffered by Plaintiff. [*Id.* at ¶¶ 90, 94, 106, 113]. On March 21, 2017, Plaintiff sued Defendants in Miami-Dade County, Florida. Defendants then removed the case from state court to the Southern District of Florida in connection with the alleged breach of contract, and the case was subsequently transferred to this Court based on a venue clause in the agreement at issue. [Doc. 26].

Relevant to the pending Motions at issue are the ongoing disputes regarding damages discovery. Specifically, Plaintiff served its initial disclosures on June 23, 2017. [Doc. 62-4]. In its original initial disclosures, Plaintiff estimated that its damages may potentially exceed $35,000,000.00, but noted that the sum was calculated without the benefit of discovery or expert

---

[1] The Complaint also refers to the Project as Hunters Point South ("HPS"). [Doc. 1-1 at ¶ 15].

witness testimony.  Further, Plaintiff categorized its damages as follows: (1) legal fees incurred in defending against claims by related entities; (2) Plaintiff's total out-of-pocket expenditures to complete the HPS job in comparison to the projected costs had Defendants been able to deliver conforming product on time; (3) damages suffered by Plaintiff as a result of being forced out-of-business by the massive cost overruns connected with remedying Defendants' failure; and (4) the demand for damages by related companies in a New York arbitration, which Plaintiff calculated to be $17,362,977.45.  [Doc. 62-4].  On October 9, 2017, Defendants served discovery requests, which Plaintiff responded to on December 18, 2017.  Specifically, Plaintiff responded to Interrogatory No. 7 as follows:

> Interrogatory No. 7:
>
> Please fully itemize and explain your calculations in determining your total damages against Defendants, or any back charges, offsets or any other costs you contend are attributable to Defendants on the Project.
>
> Answer:
> Plaintiff has provided a full itemized cost report for this project with its Initial Disclosures.  Additionally, Plaintiff has incurred significant attorney's fees resulting from litigation arising from Defendants inability and failure to timely provide conforming product as per the parties' agreement and Defendants' misrepresentations as to their ability to perform under same. Further, as a result of Defendants' actions, Plaintiff is subject to a confirmed arbitration award in favor on Monadnock and continuing litigation with the bond company.

[Doc. 62-9 at 4].

Subsequently, on March 30, 2018, and upon Defendants' request, Plaintiff amended its initial disclosures.  [Doc. 62-7].  In its amended initial disclosures, Plaintiff estimated that its damages may potentially exceed $15,000,000.00.  [*Id*. at 5].  Plaintiff specified the following categories of damages: (1) legal fees incurred in defending against claims by Monadnock; (2)

Plaintiff's out-of-pocket expenditures to complete the HPS job in comparison to the projected costs had Defendants been able to deliver conforming product on time; (3) the arbitration award— Monadnock was awarded $1,499,255.19 in the New York arbitration; (4) interest on the arbitration award and pre-judgment interest on the other elements of damages claims; and (5) legal fees and damages which may be awarded against Plaintiff in a case in the Eastern District of New York. [*Id.*].

Later, on May 8, 2018, Defendants filed a motion to compel [Doc. 62], wherein they primarily argued that Plaintiff had not complied with its initial disclosure requirements pursuant to Federal Rule of Civil Procedure 26(a) and that Plaintiff had failed to produce ESI in accordance with the parties' agreed-upon search terms. Defendants asserted in their motion that the amended initial discloses lacked any specificity regarding the categories and quantities of Plaintiff's alleged damages and that they did not clearly reflect Plaintiff's agreement to remove other types of damages. With respect to out-of-pocket expenditures, Plaintiff stated in its response that it satisfied its obligation when it provided a 162-page expenditure report and that "the total amount of these expenditures exceed[] $18 million." [Doc. 63 at 3]. With respect to the ESI, Plaintiff represented that it would be produced by June 1, 2018.

The undersigned addressed Defendants' motion at a hearing on July 11, 2018. At the beginning of the hearing, Defendants stated that they had received Plaintiff's ESI documents on June 8, 2018, and therefore, that issue was moot. [Doc. 72 at 3-4]. Plaintiff did not dispute Defendants' statement. In addition, Plaintiff stated that it was not seeking out-of-business damages and clarified that it had removed such damages in its amended initial disclosures. [*Id.* at 33]. Further, during the hearing, and in the subsequent Memorandum and Order, the Court observed that Rule 26(a)(1)(A)(iii) requires that a party's initial disclosures include "a *computation* of each

category of damages claimed by the disclosing party." [Doc. 71 at 5] (quoting Rule 26(a)(1)(A)(iii)) (emphasis in [Doc. 71]). Plaintiff agreed to produce redacted invoices with respect to the legal fees incurred against it and the calculation of interest on the Monadnock Action. With respect to its out-of-pocket damages, Plaintiff maintained that it provided Defendants a budget that they could use to determine out-of-pocket damages by subtracting the numbers in the expenditure report from the numbers in the budget. Plaintiff stated that "all the overages were attributed to the [D]efendants." [Doc. 72 at 16]. Plaintiff agreed to produce that calculation to Defendants. Thus, in its Memorandum and Order [Doc. 71], the Court ordered as follows:

1. Plaintiff shall provide Defendants a copy of the attorney invoices, which Plaintiff may redact to protect attorney-client information, incurred in the Monadnock Action and incurred to date in the New York Action;

2. Plaintiff shall produce the interest calculation on the award in the Monadnock Action; and

3. Plaintiff shall provide Defendants with its calculation and any documents in support thereof with respect to out-of-pocket damages in accordance with its requirements under Rule 26(a)(1)(A)(iii).

The Court instructed Plaintiff to provide the above information within fourteen (14) days of entry of the Memorandum and Order (i.e., August 3, 2018). Further, while the Court determined that an award of attorney's fees was inappropriate at that juncture, the undersigned noted, "The Court, however, **ADMONISHES** Plaintiff that future discovery deficiencies that result in motion practice may warrant an award of attorney's fees." [Doc. 71 at 6] (emphasis in [Doc. 71]).

The instant Motions followed.

## II.     POSITIONS OF THE PARTIES

The Court will summarize the Motions in the order in which they were filed.

**A.      Defendants' Motion to Amend Scheduling Order and for Status Conference**

Pursuant to Federal Rule of Civil Procedure 16(b)(4), Defendants request [Doc. 73] that the Court (1) modify the scheduling order to allow Defendants sufficient time to conduct fact discovery and (2) hold a status conference to discuss discovery scheduling and other issues, particularly pertaining to discovery of Plaintiff's alleged damages and calculation thereof.  For grounds, Defendants outline the parties' issues with producing ESI.  Specifically, the parties were not able to produce the ESI by their agreed-upon date of April 20, 2018.  Defendants produced their ESI on May 8, 2018.  Plaintiff did not produce any ESI, which forced Defendants to file a motion to compel.  After the filing of Defendants' motion, Plaintiff produced 334,000 pages of documents and responded to Defendants' motion to compel by representing that it had substantially complied with the search protocol by producing 334,000 documents and that the remaining documents would be produced by June 1, 2018.  Defendants state that Plaintiff did not produce any additional documents on June 1, 2018, but at the hearing, the parties represented to the Court that Plaintiff had produced the ESI, and therefore, the issue was moot.  Defendants state that on July 19, 2018, Plaintiff produced an additional 2.2 million pages of documents.  Defendants submit that they need additional time to review such documents.  Further, Defendants argue that the scheduling of depositions has been difficult and that Plaintiff's failure to provide the necessary damages information has hampered Defendants' ability to move forward with discovery.

While Plaintiff does not oppose the request for an extension of the deadlines [Doc. 77], it argues that Defendants did not meet and confer on this issue.  Further, Plaintiff asserts that its counsel has provided dates for depositions.  With respect to meeting its discovery obligations pursuant to the Court's Memorandum and Order, Plaintiff maintains that as of the filing of its

Response (i.e., August 13, 2018), it "has fully complied with the requirements of the Order." [Doc. 77 at 5].

**B.  Plaintiff's Motion for Extension of Time to Comply with Court Order**

On August 2, 2018, Plaintiff filed a Motion [Doc. 74], requesting ten additional days (August 13, 2018) to comply with the Court's Order. Defendants filed a Response [Doc. 75], objecting to the Motion. In Plaintiff's Reply [Doc. 76], it asserts, "Although Plaintiff initially asked for 10 additional days, as of the date of this filing (seven days after the August 3, 2018 deadline), Plaintiff has completed full compliance by producing all documents required by Section II(A) of this Court's Order within the possession, custody, or control of Plaintiff." [Doc. 76 at 2].

**C.  Defendants' Motion for Sanctions or, in the Alternative, to Compel**

Defendants request [Doc. 79] that the Court sanction Plaintiff for failing to comply with the Court's Memorandum and Order. Specifically, Defendants request the following sanctions: (1) that Plaintiff be prohibited from seeking or otherwise offering evidence to support damages other than the only damages Plaintiff was able to specifically identify during the Rule 30(b)(6) deposition ($2,592,806 set forth in a document known as the "Greyhawk Report"); (2) striking those portions of the Complaint that refer to any damages other than those set forth in the Greyhawk Report; (3) awarding Defendants all of their expenses, including, but not limited to, the attorney's fees they have expended chasing down the basic damages information compelled by the Federal Rules of Civil Procedure and this Court's Memorandum and Order, and wasting their time taking the Rule 30(b)(6) witness's deposition.

In the alternative, Defendants request that the Court order Plaintiff to (1) designate and produce a knowledgeable corporate representative for an additional seven-hour deposition in Chattanooga, Tennessee, on the topics noticed in Defendants' Rule 30(b)(6) notice of deposition;

(2) pay all Defendants' expenses, including, but not limited to, the attorney's fees associated with taking the Rule 30(b)(6) deposition, taking the second Rule 30(b)(6) deposition on the same topics, and all other attorney's fees Defendants have incurred trying to obtain the basic damages disclosures; (3) produce all documents requested in Defendants' second requests for production; (4) produce all iterations of the project budget upon which Plaintiff bases its damages; and (5) supplement Plaintiff's response to Defendants' Interrogatory No. 7.

For grounds, Defendants outline their attempts to compel Plaintiff to produce its damages calculations and submit how Plaintiff's calculations have been a fluctuating number. Defendants assert that on August 1, 2018, after the Court entered its Memorandum and Order, Plaintiff called Defendants and represented that the out-of-pocket damages were not the $6.5 million delta referenced at the hearing, but instead, the amounts reflected in the Greyhawk Report, which was never identified or discussed at the July 11 hearing. Defendants state that Plaintiff produced the Greyhawk Report but would not submit a calculation. Defendants sent a letter dated August 1, 2018, to Plaintiff that calculated the damages amount and requested confirmation of the said amount and to verify whether all documents had been produced to support Defendants' calculations. Defendants aver that, subsequently, Plaintiff filed its Motion for Extension [Doc. 74], representing that it had provided the first part of its out-of-pocket damages analysis but needed additional time to complete the document analysis in full compliance with the Court's Memorandum and Order. Defendants state that the following day, Plaintiff stated that it could not confirm the total damages claimed as set forth in Defendants' August 1 letter. Defendants maintain that despite Plaintiff representing to the Court that it had provided the first part of its damages calculation and that it needed more time to provide additional analysis, Plaintiff produced no other documents reflecting its out-of-pocket damages.

Further, Defendants assert that prior to the Rule 30(b)(6) deposition, they again attempted to obtain the calculation. Plaintiff's counsel stated that the out-of-pocket damages is calculated by subtracting the cost value figure in the Hunters Point Original Budget from the total costs of page 162 of the expenditure report. Defendants state that nine minutes later, Plaintiff's other counsel stated that the Greyhawk Report is not the sole basis for damages and that "the amended disclosures, Mr. Dean-Kluger's correspondence, and the documents attached to your deposition notice also provides a basis for an assessment of damages." [Doc 79-3 at 1]. Defendants maintain that Plaintiff has not provided the calculation.

In addition, Defendants argue that Plaintiff failed to prepare its corporate representative. Defendants state that Plaintiff designated Arthur Murphy ("Murphy") as its Rule 30(b)(6) witness. Defendants assert that Murphy testified that he did not review all of the documents attached to the deposition notice and that he was only able to specifically identify $2,592,806 in damages from the Greyhawk Report. Defendants argue that under these circumstances, sanctions are warranted.

Plaintiff responds [Doc. 83] that it complied with the Court's previous Memorandum and Order by providing extremely voluminous discovery and making its Rule 30(b)(6) designee available for an entire day. Plaintiff states that Murphy answered all questions posed to him. Plaintiff further argues that it identified five categories of damages. Plaintiff states that with respect to the first category (i.e., legal fees), it provided a list of the legal fees and back-up documentation by way of redacted attorney's statements up to April 20, 2018. Plaintiff states that the litigation is still pending and that it does not have an obligation to supplement on a daily basis. With respect to the second category of damages—that is, the out-of-pocket damages, Plaintiff states that these damages were documented by a comparison between the original budget and a list of Plaintiff's expenses. Plaintiff states that Murphy was questioned about this amount and that he

testified the damages equal the difference between the amount on the original budget and the final expense report. Plaintiff states that the difference is about $6.5 million. Plaintiff asserts that approximately $2.6 million of this amount was detailed in the Greyhawk Report. Plaintiff continues that the third category of damages is the amount of the award rendered by the arbitrators in the arbitration commenced by Monadnock and that a copy of the arbitration award was previously provided to Defendants. With respect to the interest on that award, Plaintiff states that its counsel addressed the interest in the email dated August 1, 2018. Finally, Plaintiff asserts that with the respect to the fifth category of damages (i.e., the legal fees and damages that may be awarded against Plaintiff in the Eastern District of New York), the action is still pending, and damages are being sought by the bonding company. Thus, Plaintiff states that no damages have been awarded, so it cannot provide this information.

### D. Defendants' Motion to File Under Seal Certain Documents Marked "Confidential"

Defendants request [Doc. 80] that the Court file under seal Exhibit F [Doc. 81] and Exhibit D [Doc. 82] to its Motion for Sanctions/Compel. For grounds, Defendants explain that Exhibit F was designated as "confidential" by Plaintiff. Further, Defendants state that Exhibit D contains portions of Plaintiff's Rule 30(b)(6) witness's testimony. The sealed portion of the testimony references Exhibit D. Defendants submit that they have filed a redacted version of Exhibit D.

Plaintiff filed a Response [Doc. 86], stating that Exhibit F is a settlement agreement with respect to certain claims in a pending matter in the United States District Court for the Eastern District of New York. Plaintiff states that while the agreement settled some of the claims, there are other viable claims pending. Plaintiff avers that the privacy rights of third parties to the New York action will be adversely affected if the document is disclosed. Plaintiff also submits the

Declaration of James P. Cinque [Doc. 86-1] in support of its request to seal Exhibit F [Doc. 81]. Finally, Plaintiff states that Exhibit D [Doc. 82] may be publicly filed.

## III. ANALYSIS

The Court has considered the parties' filings, the oral arguments, and the history of this case. Accordingly, for the reasons more fully explained below, the Court **GRANTS** Defendants' Motion to Amend [**Doc. 73**], **DENIES AS MOOT** Plaintiff's Motion for Extension [**Doc. 74**], and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Sanctions/Compel [**Doc. 79**] and Defendants' Motion to File Under Seal [**Doc. 80**].

The Court will first address Defendants' Motion for Sanctions/Compel and then the Court will turn to the remaining issues in this case.

### A. Defendants' Motion for Sanctions/Compel

As an initial matter, at the hearing, Plaintiff stated that the Florida litigation has concluded and that it is able to produce all attorney's invoices for that action. With respect to the New York action, Plaintiff stated that the litigation is pending and that it did not want to send attorney's fees to Defendants on a monthly basis. Defendants agreed that Plaintiff could provide the invoices reflecting the attorney's fees on a quarterly basis. Further, the parties agreed that Plaintiff had produced the interest calculation on the arbitration award. Thus, the remaining issues involve the out-of-pocket damages and the attorney's fees that Plaintiff alleges are attributable to Defendants' conduct.

The Court will first address whether Plaintiff has complied with its discovery obligations and then turn to Defendants' request for sanctions.

1.     **Discovery Obligations**

At the October 19 hearing, Defendants maintained that Plaintiff had not complied with its initial disclosure requirements under Rule 26(a) or the Court's Memorandum and Order. Defendants stated that Plaintiff produced a Greyhawk Report that explained approximately $2 million in damages but that Murphy testified that in order to calculate full damages, a complete analysis is needed. Plaintiff insisted that it met its requirements under Rule 26(a) and the Court's Memorandum and Order. Plaintiff stated that its damages calculation is $6.5 million and that Defendants' argument is to the sufficiency of establishing damages, as opposed to whether Plaintiff complied with its discovery obligations.

In considering the parties' arguments, the Court finds it helpful to review the requirements under Rule 26(a).

### (i) Requirements Under Rule 26(a)

Rule 26 requires a party to provide the opposing party "a computation of each category of damages claimed" as well as "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 366–67 (6th Cir. 2010) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Courts have explained that the "documentation and evidence required by Rule 26 must be sufficient to allow the opposing party to 'independently analyze' the claim." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-CV-1195, 2016 WL 4468000, at *5 (N.D. Ohio Aug. 23, 2016) (citing *Bessemer*, 596 F.3d at 370) (summary nature of damages documentation provides insufficient data to analyze claim for lost profits and fails to satisfy Rule 26); *see also Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279, at *4 (E.D. Ky. Sept. 6, 2012) (quoting *Bessemer*, 596 F.3d at 370); *Silicon Knights, Inc. v. Epic Games,*

*Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *7 (E.D. N.C. May 7, 2012) (explaining that "Rule 26(a)(1)(A)(iii) and Rule 26(e) are designed to provide a damages computation and analysis during discovery" so that the "opposing party may then prepare to meet that evidence via cross examination and via evidence in its rebuttal case (such as its own expert witness).").

By way of illustration, in *Commonwealth Motorcycles, Inc. v. Ducati North America, Inc.*, the court found that plaintiff's estimated damages were insufficient under Rule 26(a)(1). No. 3:16-cv-00002, 2017 WL 3701192, at *2 (E.D. Ky. Aug. 25, 2017). In *Commonwealth Motorcycles*, the plaintiff amended its Rule 26 disclosures to include four categories of damages, and each category provided an estimated amount of damages. *Id.* at *1. The amended disclosure did not include any explanation as to how the numbers were estimated or any details on their calculation. *Id.* At one point during the litigation, the plaintiff took the position that it would have an exact number on a later date but that engaging in a more detailed analysis would be a particularly onerous task. *Id.* The plaintiff finally provided its damages in response to defendant's motion for summary judgment. *Id.* at *2.

The defendant argued that summary judgment was appropriate because the plaintiff had not fully complied with its discovery calculation as required in Rule 26(a), which meant that the plaintiff could not prove its case. *Id.* at *3. In reviewing the initial disclosure requirement, the court explained, "[F]ailure to investigate fully is not an excuse to fail to disclose." *Id.* (quoting *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 429-30 (6th Cir. 2008)). The court further noted, "A 'reasonable computation of damages is necessary to adequately plan and prepare for trial' and a [d]efendant should not be expected to go into a trial 'blind as to the damages claim of the plaintiff.'" *Id.* (quoting *Shoffner v. Qwest Commc'ns Corp.*, No. 4:01-CV-54, 2014 WL

3495045, at *11 (E.D. Tenn. June 23, 2014), *report and recommendation adopted*, 2014 WL 3495175 (E.D. Tenn. July 11, 2014)).

In determining whether the plaintiff should be sanctioned, the court observed the plaintiff had changed its damages calculation a number of times. *Id.* at *4. The court further noted that "despite multiple attempts by defendants to ascertain what, exactly, or close to exactly, the damages they were allegedly responsible for," plaintiff would not provide the calculation, despite it being "readily attainable." *Id.* In finding sanctions appropriate, the court reasoned, "Bringing a case against any defendant requires some amount of responsibility on the part of the [p]laintiff, the most basic of which is letting the [d]efendant know with as much certainty as possible the damages they are to dispute at trial so that the [d]efendant can develop a defense to all damages claimed." *Id.*

As demonstrated above, under Rule 26(a)(1)(A)(iii), a computation of each category of damages claimed is a mandatory initial disclosure, and a plaintiff is under a continuing obligation to supplement that disclosure "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A) (stating that a disclosure under Rule 26(a) must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). Courts have explained that the "meaning of 'timely manner' varies with the facts and circumstances of each case, but courts generally take into account whether the supplementation occurred within thirty days of obtaining the information and whether the party supplemented the disclosure before discovery closed." *Riverfront Dev., Inc. v. Wepfer Marine, Inc.*, No. 216CV02553SHLCGC, 2018 WL 3043325, at *5 (W.D. Tenn. May 14, 2018) (citing *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016)). Further, "[f]ailure to

comply with a [Rule] 26(a) or (e) deadline results in a mandatory sanction under [Rule] 37(c), absent substantial justification or a showing of harmlessness." *Id.* (citing *Bessemer*, 596 F.3d at 370) ("[T]he test [under Rule 37(c)] is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.") (citation and internal quotation marks omitted).

With the above guidance in mind, the undersigned will turn to the present issues.

### (ii)    Parties' Present Dispute

As an initial matter, the Court observes that on August 16, 2018, Plaintiff had not provided Defendants with a computation of its out-of-pocket damages, despite its representation to the Court on August 10, 2018, that it was in full compliance with the Court's Memorandum and Order. *See* [Doc. 76] ("Plaintiff's Reply in Support of Motion for Extension") ("[A]s of the date of this filing, . . . Plaintiff has completed full compliance by producing all documents required by Section II(A) of this Court's Order within the possession, custody, or control of Plaintiff."). The Court specifically ordered Plaintiff to provide Defendants with its calculation *and* any documents in support thereof with respect to out-of-pocket damages in accordance with its requirements under Rule 26(a)(1)(A)(iii). On August 16, 2018, Defendants sent Plaintiff an email stating that they still do not have Plaintiff's calculation. [Doc. 79-2]. Instead of providing Defendants with a calculation, as ordered by the Court, Plaintiff responded with how the damages could be calculated. [*Id.*].[2] Nine minutes later, Plaintiff stated that the Greyhawk Report is not the sole basis for its damages and that the amended disclosures, correspondence attached from its counsel, and the documents attached to the deposition notice also provide a basis for the assessment of damages.

---

[2]    This issue was addressed at the July 11 hearing, wherein the Court specifically told Plaintiff that Rule 26 "does require a computation which would be a mathematical calculation." [Doc. 72 at 15].

[*Id.* at 79-3 at 1]. Plaintiff also stated that Defendants could question the witness and obtain more detailed information. [*Id.*]. Thus, it appears that no calculation was provided by the Court's original deadline of August 3, 2018, or Plaintiff's requested deadline of August 13, 2018.

In any event, at the October 19 hearing, Plaintiff asserted that its out-of-pocket damages were $6.5 million and stated exhibits 2 and 3 support the calculation. The Court has reviewed these documents, but the Court finds these documents provide insufficient data for Defendants to analyze Plaintiff's claim for out-of-pocket expenses.[3] Thus, the undersigned agrees with Defendants that additional analysis is required.

For instance, as Defendants argued at the hearing, it is unclear what damages are specifically attributed to Defendants' alleged conduct. *See Commonwealth Motorcycles*, 2017 WL 3701192, at *4 (plaintiff "continued to not actually calculate [its] damages despite multiple attempts by [d]efendants to ascertain what, exactly, or close to exactly, the damages they were allegedly responsible for"). Instead, Plaintiff relies on what it budgeted for the Project subtracted by the actual costs, but Plaintiff has not explained what damages are attributed to Defendants. This insufficiency has essentially kept Defendants in the dark as to what further discovery needs to be completed because the individual line items need to be analyzed to calculate the damages attributed to Defendants.

At the hearing, Plaintiff acknowledged that its analysis is incomplete. Plaintiff stated that its damages for out-of-pocket expenses are approximately $6.5 million, plus attorney's fees. When

---

[3] It appears to the Court that the exhibits are actually 1 and 4. [Doc. 79-1 at 5-6, 14-175]. Exhibit 1 [Doc. 79-1 at 5-6] is the Hunters Point South Budget, which provides a cost value for the Project as $11,959,803.00. Exhibit 4 appears to be the 162-page expenditure report that Plaintiff previously referenced. [Doc. 79-1 at 14-175]. This lists the total cost as $18,518,225.36. Using the formula provided by Plaintiff, $18,518,225.36 (costs) minus $11,959,803.00 (budget) equals $6,558,422.36.

asked about the $6.5 million, Plaintiff stated that the Greyhawk Report provided the analysis for approximately $2 million out of the $6.5 million. Plaintiff acknowledged that as to the remaining amount, its analysis is incomplete. Thus, as evidenced by the Greyhawk Report, the explanation for the remaining amount is readily attainable. Plaintiff just has not, despite repeated requests, informally and formally, to provide the explanation. At one point during the hearing, Plaintiff stated that it will "maybe" hire an expert to complete the analysis. The Court reminded Plaintiff that its expert disclosures were currently due on November 6, 2018. In any event, this was the first time that Plaintiff stated to the Court that it may need an expert to analyze its remaining, unexplained damages. Plaintiff did not elaborate on why an expert was necessary and later stated that its former president, Mr. Anderson ("Anderson"), could testify as to the damages that Defendants allegedly caused. *See Moore v. Weinstein Co., LLC*, No. 3:09-CV-166, 2011 WL 3348074, at *9 (M.D. Tenn. Aug. 3, 2011) (noting that the "court respects that [p]laintiffs may have to make use of expert testimony to calculate damages," but such experts have not been disclosed and that they "have yet to put forth any theory regarding how they intend to calculate their damages").

The Court observes that Defendants have requested this information numerous times via numerous methods. For instance, in addition to the attempts outlined above, Defendants have also requested such information in its discovery requests (i.e., Interrogatory No. 7). Specifically, Interrogatory No. 7 requests that Plaintiff fully itemize and explain its calculations with respect to its total damages. Plaintiff simply responds that it has provided a full itemized cost report in its initial disclosures, it has incurred legal fees, an award from the Monadnock action, and it is engaged in continuing litigation with the bond company. Plaintiff's response to Interrogatory No. 7 is wholly inadequate because Plaintiff does not provide any itemization or explanation for its

calculations as requested.[4]  Accordingly, the Court finds Plaintiff's response to Interrogatory No. 7 insufficient.

Finally, the Court notes that Defendants deposed Murphy, Plaintiff's designated Rule 30(b)(6) witness, in an attempt to elicit information with respect to damages that Plaintiff attributes to Defendants.  Defendants provided eleven topics in its notice of deposition, which included the specific damages sought with respect to each category of damages that were identified by Plaintiff. [Doc. 79-1 at 3-4].  Murphy was not able to testify to a number of specific topics in the notice, including questions involving damages.  For instance, Defendants questioned: "What portion of the $6,522,000 difference between Exhibit 3 and Exhibit Number 2 is not related to the defendants?"  [Doc. 82 at 26].  Murphy testified, "Maybe some of the bond costs are not related to the defendants.  Maybe there are some costs in here that aren't.  But we—again, I'm sure there are some expenses in here, but as I said, the lion's share of items related to this have to do with the delays, the reworking, the issues we had."  [*Id.* at 26-27].  In their Motion for Sanctions/Compel, Defendants have further laid out the deficiencies in Murphy's deposition.  *See* [Doc. 79 at 13-14]. At the hearing, Plaintiffs conceded that Murphy was not able to answer everything but insisted that the former president, Anderson, would be able to answer questions.  Plaintiff, however, designated Murphy as the Rule 30(b)(6) witness, not Anderson.

It appears to the Court that Plaintiff's damages have essentially been a moving target.  On June 23, 2017, Plaintiff estimated that its damages exceeded $35,000,000.  On March 30, 2018,

---

[4] Defendants assert in their Motion for Sanctions/Compel that they requested Plaintiff supplement its response to Interrogatory No. 7 but that Plaintiff refused to supplement its response. [Doc. 79 at 9 n.4].  Defendants cite to a letter from Attorney Dean-Kluger, stating as follows, "Further, I do not agree with your efforts to add additional requirements not contained within the Order as contained in subsection (c) in the last paragraph of your letter."  While the Court did not specifically mention Interrogatory No. 7 in its previous Memorandum and Order, Plaintiff has an obligation to respond and supplement to discovery requests without the Court directing it to do so.

Plaintiff estimated that its damages may exceed $15,000,000.00. When out-of-pocket damages became an issue, Plaintiff represented [Doc. 63] to the Court that its expenditures exceeded $18 million. At the July 11 hearing, Plaintiff stated that with respect to its out-of-pocket damages, they provided a budget to determine such damages but did not provide a computation. Finally, on October 19, Plaintiff represented that its out of-pocket damages were $6.5 million. Plaintiff's Rule 30(b)(6) witness earlier testified, however, that Plaintiff is not attributing that entire amount to Defendants. *See* [Doc. 79 at 13]. At the July 11 hearing, Plaintiff stated that it amended its initial disclosures to remove out-of-business damages. [Doc. 72 at 33]. In Murphy's deposition, he discusses such damages and states that he does not know if Plaintiff is pursuing such damages. *See* [Doc. 79 at 23]. In sum, Defendants have requested specificity as to the damages attributed to them, the Court has ordered a computation with the supporting documents, and Defendants have deposed a Rule 30(b)(6) witness that only provided testimony as to some of the damages and confusion as to others.

Accordingly, based on the above, the Court finds that Plaintiff did not comply with its initial disclosure requirements pursuant to Rule 26(a)(1)(A)(iii) or the undersigned's Memorandum and Order directing it to provide a computation with the supporting documents by August 3, 2018, nor did it comply by the requested extension of August 13, 2018. The Court finds Plaintiff's reliance upon the formula (budget minus expense) insufficient as demonstrated by Murphy's deposition and the exhibits thereto. Further, the Court finds Plaintiff's response to Interrogatory No. 7, and its refusal to supplement, improper.

Now that the Court has determined Plaintiff has not complied with its discovery obligations, the Court will determine whether sanctions are appropriate.

## 2. Sanctions

As outlined in section II(C), *supra*, Defendants request that the Court sanction Plaintiff for failing to comply with the Court's Memorandum and Order. Specifically, Defendants request the following sanctions: (1) that Plaintiff be prohibited from seeking or otherwise offering evidence to support damages other than the only damages Plaintiff was able to specifically identify during the Rule 30(b)(6) deposition ($2,592,806 set forth in a document known as the "Greyhawk Report"); (2) striking those portions of the Complaint that refer to any damages other than those set forth in the Greyhawk Report; (3) awarding Defendants all of their expenses, including, but not limited to, the attorney's fees they have expended chasing down the basic damages information compelled by the Federal Rules of Civil Procedure and this Court's Order, and wasting their time taking the Rule 30(b)(6) witness's deposition.

In the alternative, Defendants request that the Court order Plaintiff to (1) designate and produce a knowledgeable corporate representative for an additional seven-hour deposition in Chattanooga, Tennessee, on the topics noticed in Defendants' Rule 30(b)(6) notice of deposition; (2) pay all Defendants' expenses, including, but not limited to, the attorney's fees associated with taking the Rule 30(b)(6) deposition, taking the second Rule 30(b)(6) deposition on the same topics, and all other attorney's fees Defendants have incurred trying to obtain the basic damages disclosures; (3) produce all documents requested in Defendants' second requests for production; (4) produce all iterations of the project budget upon which Plaintiff bases its damages; and (5) supplement Plaintiff's response to Defendants' Interrogatory No. 7.

Federal Rule of Civil Procedure 37 governs the use of sanctions with respect to discovery failures. Rule 37(b)(2) provides as follows:

> **(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated

under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The Rule also provides as follows:

*(C) Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

Sanctions are also available under Rule 37(c) for failing to disclose or supplement. Rule 26(e) requires a party to supplement its disclosure and other discovery responses "in a timely manner," *see* Fed. R. Civ. P. 26(e), and the failure to comply with Rule 26(a) or (e) may result in imposition of sanctions pursuant to Rule 37(c)(1) unless the violation was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1).

In determining whether sanctions are appropriate pursuant to Rule 37, the Sixth Circuit has utilized four factors. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Specifically, the Sixth Circuit has explained as follows:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Id.* "A court is vested with wide discretion in determining an appropriate sanction under Rule 37." *Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 902 (S.D. Ohio 2015).

The Court has carefully considered and weighed all four factors. While the Court finds some sanctions are appropriate, the Court does not find that Defendants' requested sanctions are appropriate at this time. The Court has considered the first factor—that is, whether Plaintiff was willful, acted in bad faith, or was at fault. The Court finds that Plaintiff was at fault for the violations. At the July 11 hearing, the Court made it clear to Plaintiff that it was required to provide a computation and that its initial disclosures were inadequate. Plaintiff did not provide a computation, even after it represented to the Court that it was in full compliance with the Memorandum and Order. Further, Plaintiff did not provide a Rule (30)(b)(6) witness that was able to address the subject matters that were noticed. Plaintiff conceded that Murphy could not answer the questions relating to damages.

Second, the Court has also considered whether Defendants have been prejudiced by Plaintiff's failure to cooperate in discovery. The Court finds that Defendants have been prejudiced due the impending deadlines in this case, but as further explained below, the Court will extend

certain deadlines, as Defendants have requested, making Plaintiff's noncompliance less prejudicial. Further, the Court admonished Plaintiff in the previous Memorandum and Order that "future discovery deficiencies that result in motion practice may warrant an award of attorney's fees." [Doc. 71 at 6].

Finally, the Court has considered whether less drastic sanctions were first imposed or considered. The Court considered an award of attorney's fees at the previous hearing but declined to award them. The Court finds that it is appropriate to award attorney's fees at this juncture because Plaintiff's noncompliance with its discovery obligations has cost Defendants' time and resources and has hampered their ability to move forward with discovery. The Court finds that Defendants **SHALL** be awarded their reasonable attorney's fees in preparing and litigating their Motion for Sanctions/Compel and that Defendants **SHALL** be awarded half their attorney's fees associated with taking Murphy's deposition. The Court will award half of the attorney's fees for Murphy's deposition because Murphy was able to provide some helpful information. The Court declines to award attorney's fees for Anderson's deposition at this time because it is unclear how helpful his deposition will be, and the Court has already awarded half of the attorney's fees for Murphy's deposition.

Defendants shall submit their attorney's fees to Plaintiff within fourteen (14) days of entry of this Memorandum and Order. If the parties dispute the reasonableness of Defendants' attorney's fees, they may bring the matter to the attention of the Court.

The Court has specifically considered Defendants' request to prohibit Plaintiff from offering evidence of its full amount of alleged damages and/or striking the pleadings that refer to any damages other than those set forth in the Greyhawk Report. While Rule 37(b)(2) allows such sanctions, the Court finds these proposals too drastic at this time. Instead, the Court prefers that

the parties proceed with their discovery obligations and that this case, including the issue of damages, be considered and tried on the merits. The Court **ADMONISHES** Plaintiff that future discovery abuses of similar magnitude could warrant the more drastic sanctions described in Rule 37(b)(2).

### B. Defendants' Motion to Amend and Plaintiff's Motion for Extension

Defendants request [Doc. 73] that the Court modify the Scheduling Order to allow them sufficient time to conduct fact discovery. Defendants also request a status conference, which the Court granted by setting the hearing on October 19, 2018. As mentioned above, Plaintiff requested until August 10, 2018, to comply with the Court's previous Memorandum and Order, but as explained above, the Court has already determined that Plaintiff was not in compliance.

Given the issues discussed above, the Court finds it appropriate to modify the Scheduling Order in this case. Accordingly, the Scheduling Order and other deadlines are amended as follows:

1. Plaintiff shall complete its damages analysis, including supplementing its response to Interrogatory No. 7; producing documents relating to out-of-business damages, if Plaintiff is claiming such damages; and any legal fees that have yet not been explained; on or before **November 16, 2018**. If an expert is necessary for additional analysis, Plaintiff shall submit its expert disclosures on or before **December 6, 2018**. If Anderson, or other Rule 30(b)(6) witnesses, can provide testimony as to damages, the parties **SHALL** work together to schedule such deposition(s) by agreement prior to **December 31, 2018**;

2. Defendants shall submit their expert disclosures on or before **January 31, 2019**;

3. Final witness lists shall be due by **February 15, 2019**; and

4. All discovery shall be completed by **February 29, 2019**.

Accordingly, the Court finds Defendants' Motion to Amend [**Doc. 73**] is **GRANTED**, and Plaintiff's Motion for Extension [**Doc. 74**] is **DENIED AS MOOT**.

### C. Defendants' Motion to Seal

Defendants have requested [Doc. 80] that Exhibit F [Doc. 81] and Exhibit D [Doc. 82] be filed under seal due to Plaintiff's "confidentiality" designations. Plaintiff filed a Response [Doc. 86], explaining that Exhibit F is a confidential settlement agreement in a case pending in the Eastern District of New York and that the settlement agreement involves parties that are not part of this case. Further, Plaintiff states that the settlement agreement does not dispose of all claims in the New York action. The Court finds Plaintiff has established good cause for filing [Doc. 81] under seal. Further, Plaintiff states that [Doc. 82] may be publicly filed. Accordingly, Defendants' Motion to File Under Seal [**Doc. 80**] is **GRANTED IN PART AND DENIED IN PART**. The Clerk is **DIRECTED** to place [Doc. 81] under seal. Further, based on Plaintiff's representation, the Court is **DIRECTED** to unseal [Doc. 82].

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court finds as follows:

1. Defendants' Motion to Amend Scheduling Order and for Status Conference [**Doc. 73**] is **GRANTED**;

2. Plaintiff's Motion for Extension of Time to Comply with Court Order is **DENIED AS MOOT** [**Doc. 74**];

3. Defendants' Motion for Sanctions or, in the Alternative, to Compel [**Doc. 79**] is **GRANTED IN PART AND DENIED IN PART**; and

4. Defendants' Motion to File Under Seal Certain Documents Marked "Confidential" [**Doc. 80**] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*

Debra C. Poplin
United States Magistrate Judge